<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**


MANUEL BERMUDEZ,                    :
                                    :   Civil Action No. 12-6035 (FLW)
                Plaintiff,          :
                                    :
        v.                          :   **OPINION**
                                    :
ESSEX COUNTY D.O.C., et al.,        :
                                    :
                Defendants.         :


**APPEARANCES:**

        MANUEL BERMUDEZ, Plaintiff <u>pro se</u>
        #092791605
        Essex County Correctional Facility
        Infirmary 5H1200
        354 Doremus Avenue
        Newark, New Jersey 07105

**WOLFSON**, District Judge

        Plaintiff, Manuel Bermudez, a state inmate confined at the
Essex County Correctional Facility Infirmary in Newark, New
Jersey, at the time he filed this Complaint, seeks to bring this
action *in forma pauperis*.  Based on his affidavit of indigence,
the Court will grant Plaintiff's application to proceed *in forma
pauperis* ("IFP") pursuant to 28 U.S.C. § 1915(a) (1998) and
order the Clerk of the Court to file the Complaint.

        At this time, the Court must review the Complaint, pursuant
to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, to determine whether it

should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.  For the reasons set forth below, the Court concludes that Plaintiff's action should be dismissed without prejudice at this time.

## I.   BACKGROUND

Plaintiff, Manuel Bermudez ("Plaintiff"), brings this civil action against the following defendants, the Essex County Department of Corrections, the Ocean County Courthouse, Detective Mitch of the Jackson Police Department, the Lakewood Township Police, and the Howell Township Police Department. (Complaint, Caption.)  The Court observes that the pleading or papers submitted by Plaintiff are somewhat confusing and inarticulate.

First, Plaintiff uses a federal tort claim form (Standard Form 95, as prescribed by the Department of Justice, 28 C.F.R. § 14.2), which sets forth a string of claims without detail of facts.  For instance, at ¶ 8, Basis of Claim, Plaintiff writes the following:  "Judge Flinston and pro se Linda Chan stated that they send a notice to appear in court and charge me with it.  However, I answer to the court that they never send one to my house, now I'm facing deportation that cruel and unusual

2

punishment, only because they think they are right, when they are not, they using extortion, obstruction of justice against a mental and physical impairment a veteran of the U.S.A."  Then, Plaintiff lists his claims as follows:  "See Yellow Page, Negligence, assault, battery, false imprisonment, abuse of process, loss of enjoyment of life, libel, slander, misrepresentation, deceit."

In the claim form, Plaintiff also alleges property damage, including that "everything was trash out, cloth, [shoes], T.V.H.D., bed , furniture, jewelry, GMC truck, Neon car, Caravan van."  (Standard Form 95 at ¶ 9.)  Plaintiff then alleges that he has suffered personal injury as follows: "mental impairment, schizophrenic, depression, anxiety, memory lost, got kill and revive, broken jaw, need a wheelchair or walker to walk, can't walk properly, loss of hand move[ment] and strength, loss of hearing, segregated from family, mental torture, and [physical], causes of action, 1st, 4th, 5th, 6th Amendment, unjustly, facing a deportation, and I'm innocent of all charges, loss my [whole] family, grandkids, son, and daughter, wife, mother, etc." (*Id.*, ¶ 10.)

Second, Plaintiff attaches a letter dated August 29, 2012, addressed to the "Commission of Immigration" and referencing a "Federal Tort Claim Act, *Bivens* Claims, in the same lawsuit, a

victim of imperfect system." Plaintiff alleges that he is segregated with no visitors for 22 hours a day, with no access to the law library. He also alleges that, on January 3, 2012, while trying to walk with two canes, he slipped and fell on January 3, 2012, in a puddle of water. Plaintiff has nerve damage and pain in his left and right hip and back, but he is denied medication for the pain. On March 20, 2012, Plaintiff slipped and fell again in his cell because of food and juice on the floor. Plaintiff alleges that he cannot clean his cell due to his disabilities, but Correctional Officer ("CO") Miles and Sgt. Wohl expect Plaintiff to clean his cell. As a result of the last fall, Plaintiff has pain and numbness in his right hand, like carpal tunnel syndrome.

Plaintiff further alleges that it took a month before a doctor examined Plaintiff's injuries, and he was prescribed pills for the inflammation that did nothing to relieve his pain. Plaintiff also complains that he had asked to see the dentist, but was ignored until his fillings fell out and his left top molar cracked. Plaintiff was treated by a dentist on May 17, 2012, but he alleges that the dentist only cleaned his teeth and prescribed antibiotics for his infection. Plaintiff further alleges that he has been asking to go to a psychiatric clinic.

Next, in his August 29, 2012 letter, Plaintiff alleges that he spent a year going to court.  His public defender found Plaintiff confined in immigration detention, and she sent an escort to take Plaintiff to the Ocean County Court House.  The public defender allegedly told Plaintiff that she had a plea bargain for him with no jail time, no probation, with time served, but that she could not make Plaintiff take the plea deal because he was mentally incompetent.

On or about December 2, 2011, a parole officer and immigration enforcement arrived at Plaintiff's house without notice or warrant and arrested Plaintiff, taking him to an immigration hold.  It appears that Plaintiff is alleging that Judge Flinston wants to remove Plaintiff from the United States, and will not listen to Plaintiff's argument that he is innocent and a victim of an "imperfect system of indictment."

Plaintiff further alleges that while he was confined at the Ocean County Jail, CO Kenneth Marshall and Sgt. Garabaldi "set a trap" for Plaintiff and they threatened to tell Plaintiff's charges to other inmates because they did not like Plaintiff. Plaintiff also alleges that the officers threatened to have Plaintiff killed, "so it did happen, but I was revive, when I came back from the dead, I was blind with a broken jaw and hearing loss and that's how Judge James N. Cita took advantage

5

of my mental incompeten[ce], and make me guilty of a crime that never existed."

Finally, Plaintiff submitted a "Sample Letter to Petition for Release" with this action.  The letter is dated August 2012, and states that Plaintiff has been detained by the United States Department of Homeland Security ("DHS") for nine months since December 2, 2011.  Plaintiff alleges that an order of removal was entered against him on December 2, 2011, but the Embassy of Nicaragua has notified Plaintiff that no travel documents will be issued for Plaintiff's return to Nicaragua from the United States.  Plaintiff contends that he is not a flight risk and has extensive ties to the community.  If released, he will reside with his family in Lakewood, New Jersey.  Plaintiff further states that, if released he will attend church and a drug and alcohol rehabilitation program.  Upon this Court's own inquiry as to the basis for Plaintiff's present detention, by telephone communication with the Newark Field Office for the U.S. Immigration and Customs Enforcement ("ICE"), it was revealed that Plaintiff is not in the custody of the ICE at this time.

Plaintiff also submitted an application for appointment of counsel in this matter.  (Docket entry no. 1-2.)

II.   <u>STANDARDS FOR A SUA SPONTE DISMISSAL</u>

The Prison Litigation Reform Act, Pub.L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a district court to review a complaint in a civil action in which a prisoner is proceeding in forma pauperis or seeks redress against a governmental employee or entity.  The Court is required to identify cognizable claims and to *sua sponte* dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  *See* 28 U.S.C. § 1915(e)(2)(B). This action is subject to *sua sponte* screening for dismissal under 28 U.S.C. §§ 1915(e)(2)(B) because Plaintiff is proceeding as an indigent.[1]

The Supreme Court refined the standard for summary dismissal of a complaint that fails to state a claim in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  The Court examined Rule 8(a)(2) of the Federal Rules of Civil Procedure which provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  *Fed.R.Civ.P.* 8(a)(2).  Citing its opinion in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) for the proposition that "[a] pleading that

---

[1] It is not entirely clear whether Plaintiff is a pretrial detainee, an immigration detainee or a convicted prisoner. Consequently, the Court will screen this action under 28 U.S.C. §§ 1915(e)(2)(B) because Plaintiff is proceeding as an indigent.

offers 'labels and conclusions' or 'a formulaic recitation of
the elements of a cause of action will not do,'" *Iqbal*, 556 U.S.
at 678 (quoting *Twombly*, 550 U.S. at 555), the Supreme Court
held that, to prevent a summary dismissal, a civil complaint
must allege "sufficient factual matter" to show that the claim
is facially plausible.  This then "allows the court to draw the
reasonable inference that the defendant is liable for the
misconduct alleged." *Fowler v. UPMC Shadyside*, 578 F.3d 203,
210 (3d Cir. 2009)(citing *Iqbal*).

The Supreme Court's ruling in *Iqbal* emphasizes that a
plaintiff must demonstrate that the allegations of his complaint
are plausible.  *See Iqbal*, 556 U.S. 677-679.  *See also Twombly*,
505 U.S. at 555, & n. 3; *Warren Gen. Hosp. v. Amgen Inc.*, 643
F.3d 77, 84 (3d Cir. 2011); *Bistrian v. Levi*, 696 F.3d 352 (3d
Cir.2012).  "A complaint must do more than allege the
plaintiff's entitlement to relief.  A complaint has to 'show'
such an entitlement with its facts." *Fowler*, 578 F.3d at 211
(citing *Phillips v. County of Allegheny*, 515 F.3d 224, 234-35
(3d Cir. 2008)).

The Third Circuit cautioned, however, that *Twombly* and
*Iqbal* "do not provide a panacea for defendants," rather, "they
merely require that plaintiff raise a 'plausible claim for
relief.'"  *Covington v. International Association of Approved*

*Basketball Officials*, ___ F.3d ___, 2013 WL 979067, *2 (3d Cir. March 14, 2013)(quoting *Iqbal*, 556 U.S. at 679). Thus, factual allegations must be more than speculative, but the pleading standard "is not akin to a 'probability requirement.'" *Covington*, *supra* (quoting *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 556).

### III.   DISCUSSION

#### A.   Insufficient Claims

This Court first observes that Plaintiff's bald assertions of certain claims without factual support are subject to dismissal without prejudice under *Iqbal*. Namely, Plaintiff simply alleges claims of negligence, assault, battery, false imprisonment, abuse of process, loss of enjoyment of life, slander, libel, misrepresentation and deceit, without alleging "sufficient factual matter" to show that the claim is facially plausible. Instead, Plaintiff's pleading contains nothing more than "labels and conclusions," which alone, without factual support, are inadequate to prevent summary dismissal. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Accordingly, these claims will be dismissed without prejudice for failure to state a claim at this time.

B.  Denial of Medical Care

Next, Plaintiff appears to allege that he has been denied medical treatment for injuries sustained in two slip and fall accidents in January 2012 and March 2012, as well as requests for dental treatment.  The Court construes this as a claim of a constitutional deprivation under 42 U.S.C. § 1983.[2]  It would appear that Plaintiff may be a pretrial detainee based on the allegations in his pleading.  As noted above, he is not under the custody of the ICE, and the New Jersey Department of Corrections' Internet offender search engine does not show that Plaintiff is confined as a convicted prisoner.  Thus, assuming Plaintiff is a pretrial detainee, as such, his denial of medical care claims are examined under the Fourteenth Amendment's Due

---

[2] A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Piecknick v. Pennsylvania*, 36 F.3d 1250, 1255–56 (3d Cir.1994).

Process Clause.  *See City of Revere v. Massachusetts General Hospital*, 463 U.S. 239, 243-45 (1983)(holding that the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment, controls the issue of whether prison officials must provide medical care to those confined in jail awaiting trial); *Hubbard v Taylor* ("*Hubbard I*"), 399 F.3d 150, 158 (3d Cir. 2005); *Fuentes v. Wagner*, 206 F.3d 335, 341 n. 9 (3d Cir. 2000); *Monmouth County Correctional Institutional Inmates v. Lanzaro*, 834 F.2d 326, 346 n. 31 (3d Cir. 1987), *cert. denied*, 486 U.S. 1006 (1988). *See also Montgomery v. Ray*, 145 Fed. Appx. 738, 740, 2005 WL 1995084 (3d Cir. 2005)(unpubl.)("the proper standard for examining such claims is the standard set forth in *Bell v. Wolfish*, 441 U.S. 520 ... (1979); *i.e.*, whether the conditions of confinement (or here, inadequate medical treatment) amounted to punishment prior to adjudication of guilt ....")(citing *Hubbard I*, 399 F.3d at 158). In *Hubbard I*, the Third Circuit clarified that the Eighth Amendment standard only acts as a floor for due process inquiries into medical and non-medical conditions of pretrial detainees.  399 F.3d at 165-67.

Thus, in assessing the denial of medical care to a pretrial detainee, the inquiry is whether the denial was "imposed for the purpose of punishment or whether it [was] but an incident of

some other legitimate governmental purpose." *Bell v. Wolfish*, 441 U.S. at 538.

In this case, Plaintiff alleges that he was not given any pain medications or treatment after his two falls, that the doctor did not examine Plaintiff for a month after his second fall, and that he was not given dental treatment until after his molar cracked and his fillings fell out. The Court notes that Plaintiff was housed in the infirmary, but it is not clear that his housing assignment suggests that he received medical treatment necessary for his alleged injuries and dental problems. Thus, accepting Plaintiff's allegations as true, as this Court must at this preliminary screening stage, the Court would be constrained to allow this denial of medical care claim proceed at this time.

However, Plaintiff does not identify any defendants with respect to this denial of medical care claim. Plainly, the Defendants Ocean County Courthouse, Detective Mitch of the Jackson Township Police, the Lakewood Township Police or the Howell Township Police have no personal involvement or connection with the allegations of this denial of medical care claim, which allegedly occurred at the Essex County Correctional Facility.

Moreover, the Essex County Department of Corrections, which is essentially an administrative designation for a department of Essex County,[3] should be dismissed without prejudice from this action, because as a local government unit, it is not liable pursuant to 42 U.S.C. § 1983, solely under a theory of *respondeat superior*.  *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 824 n. 8 (1985); *Monell v. New York City Department of Social Services*, 436 U.S. 658, 690-91, 694 (1978)(municipal liability attaches only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" complained of); *Natale v. Camden County Correctional Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003).

Most recently, the Third Circuit reaffirmed that a municipality "may not be held liable for constitutional torts under § 1983 on a vicarious liability theory rooted in respondeat superior ... but it can be held responsible when the injury inflicted is permitted under its adopted policy or

---

[3] *See Vance v. County of Santa Clara*, 928 F. Supp. 993, 995 (N.D.Cal. 1996)(county department of corrections is an agency of the county and cannot be sued separately from the county under § 1983); *Mayes v. Elrod*, 470 F. Supp. 1188, 1192 (N.D.Ill. 1979) (county department of corrections not a suable entity separate from the county).

custom."[4] *Mulholland v. County of Berks*, 706 F.3d 227, 237 (3d Cir. 2013)(citation omitted; internal quotation marks omitted); *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996)("When a suit against a municipality is based on § 1983, the municipality can only be liable when the alleged constitutional transgression implements or executes a policy, regulation or decision officially adopted by the governing body or informally adopted by custom." (citing *Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978))).  In other words, in order to state a claim for § 1983 municipal liability, Plaintiff must have pled a policy or custom of Essex County that led to the alleged denial of medical and dental treatment.

Here, Plaintiff's Complaint is facially insufficient in this regard.  The Complaint includes no allegation, or even suggestion, that Essex County had a policy or custom that controlled any of the individual decisions or incidents related to Plaintiff's allegations of denial of medical treatment. Thus, based on this pleading deficiency alone, Plaintiff has failed to state a claim against Essex County Department of Corrections for vicarious liability under § 1983.  *See Mulholland*, 706 F.3d at 238 ("[T]o establish municipal liability

---

[4] Thus, to the extent that Plaintiff argues that Essex County Department of Corrections should be liable under a simple theory of *respondeat superior*, that claim fails as a matter of law.

under § 1983, [a plaintiff] must show that they were deprived of 'rights, privileges, or immunities secured by the Constitution and laws,' and that the deprivation of those rights was the result of an official government policy or custom.").

Furthermore, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of *respondeat superior*.  Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted).  *Accord Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1293-96 (3d Cir. 1997); *Baker v. Monroe Twp.*, 50 F.3d 1186, 1190-91 (3d Cir. 1995).

Here, Plaintiff does not make any allegations that Essex County engaged in any specific, harmful acts, nor does he allege, as discussed above, any governmental policy or custom that may be said to result in this alleged constitutional deprivation.  This Court further notes that Plaintiff's reference to the Essex County Department of Corrections is more likely intended as the Essex County Correctional Facility where his is housed, and which would not be a proper defendant in a § 1983 action.  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)(confinement facility is not entity cognizable as

"person" for purposes of § 1983 suit); *Grabow v. S. State Corr. Fac.*, 726 F. Supp. 537, 538–39 (D.N.J. 1989)(same); *see also Marsden v. Fed. BOP*, 856 F. Supp. 832, 836 (S.D.N.Y. 1994)(same); *Mitchell v. Chester County Farms Prison*, 426 F. Supp. 271, 274 (E.D.Pa. 1976).

Therefore, this Court will dismiss without prejudice this denial of medical care claim for failure to state a cognizable claim at this time.[5]  This dismissal is without prejudice to Plaintiff filing an amended Complaint to cure the deficiencies of this action as noted herein.[6]

---

[5] It also appears that Plaintiff may be asserting a conditions claim with respect to his bald allegation that he is confined to his infirmary room for 22 hours every day without visitors. However, Plaintiff makes no further allegations regarding deprivation of his basic human needs that might suggest his confinement in the infirmary is intended as punishment. *See Helling v. McKinney*, 509 U.S. 25, 32 (1993)(Objectively, under the Due Process Clause, as well as the Eighth Amendment, prison officials must satisfy inmates' "basic human needs-*e.g.*, food, clothing, shelter, medical care, and reasonable safety."). Accordingly, this claim likewise will be dismissed without prejudice for failure to state a claim at this time.

[6] Plaintiff should note that when an amended complaint is filed, the original complaint no longer performs any function in the case and "cannot be utilized to cure defects in the amended [complaint], unless the relevant portion is specifically incorporated in the new [complaint]."  6 Wright, Miller & Kane, Federal Practice and Procedure § 1476 (2d ed.1990)(footnotes omitted).  An amended complaint may adopt some or all of the allegations in the original complaint, but the identification of the particular allegations to be adopted must be clear and explicit.  Id.  To avoid confusion, the safer course is to file an amended complaint that is complete in itself.  Id.

C.   Access to Law Library Claim

Under the First and Fourteenth Amendments, prisoners retain

a right of access to the courts,[7] but that right does not include

---

[7] The right of access to the courts is an aspect of the First Amendment right to petition. *See McDonald v. Smith*, 472 U.S. 479, 482 (1985); *Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 741 (1983); *Milhouse v. Carlson*, 652 F.2d 371, 373 (3d Cir. 1981). The Supreme Court also found that "[t]he constitutional guarantee of due process of law has as a corollary the requirement that prisoners be afforded access to the courts in order to challenge unlawful convictions and to seek redress for violations of their constitutional rights [associated with their conditions of confinement]." *Procunier v. Martinez*, 416 U.S. 396, 419 (1974), *overruled on other grounds, Thornburgh v. Abbott*, 490 U.S. 401, 413–14 (1989); *see also Hudson v. Palmer*, 468 U.S. 517, 523 (1984); *Bounds v. Smith*, 430 U.S. 817 (1977); *Wolff v. McDonnell*, 418 U.S. 539, 576 (1974).

In *Bounds*, the Supreme Court held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds*, 430 U.S. at 828. The right of access to the courts is not, however, unlimited. "The tools [that *Bounds*] requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Lewis v. Casey*, 518 U.S. 343, 355 (1996)(emphasis removed).

Thus, to state a cognizable access to the courts claim, a complainant must demonstrate that: (1) he suffered an "actual injury" ( i.e., that he lost an opportunity to pursue a non-frivolous claim); and (2) he has no other remedy, save the present civil rights suit, that can possibly compensate for the lost claim. *See Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008). Correspondingly, "[t]he complaint must describe the underlying arguable claim well enough to show that it is 'more than mere hope,' and it must describe the 'lost remedy.'" *Id*. at 205–06 (citing *Christopher v. Harbury*, 536 U.S. 403, 416–17

a freestanding right to a minimum amount of time in a law library. *See Lewis v. Casey*, 518 U.S. 343, 346 (1996); *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir.), *cert. denied, Stover v. Beard*, 129 S.Ct. 1647 (2008).  "Where prisoners assert that defendants' actions have inhibited their opportunity to present a past legal claim, they must show (1) that they suffered an 'actual injury'-that they lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim; and (2) that they have no other 'remedy' that may be awarded as recompense' for the lost claim other than in the present denial of access suit." *Monroe* at 205 (quoting *Christopher v. Harbury*, 536 U.S. 403, 415 (2002)).  To establish standing, "[t]he complaint must describe the underlying arguable claim well enough to show that it is 'more than mere hope,' and it must describe the 'lost remedy.'" *Monroe* at 205-206 (quoting *Christopher* at 416-17).

In this case, Plaintiff's First Amendment access to courts claim is a singular, bald statement that he has "no access to law library."  He provides no facts showing that the denial of access to a law library caused actual injury to his pursuit of a non-frivolous legal claim.  Nor does he describe any "'lost remedy" or actual injury necessary to state a cognizable claim.

---

(2002)); *see also Lewis*, 518 U.S. at 348-51, 354-55; *Oliver v. Fauver*, 118 F.3d 175, 177-78 (3d Cir. 1997); *Hoffenberg v. Bumb*, 2011 U.S.App. LEXIS 11741, at *9, 2011 WL 2260490 (3d Cir. N.J. June 9, 2011).

*Monroe* at 205-206 (quoting *Christopher* at 416-17).  Accordingly, this Court will dismiss without prejudice Plaintiff's access to courts claim for failure to state a claim at this time.

D.   Habeas Claims

Finally, it would appear that Plaintiff may be challenging his detention pending removal from the United States, as well as the removal order itself, and/or the underlying criminal conviction that serves as the basis for his removal.  For instance, Plaintiff alleges that he did not receive notice of his removal proceedings, that he could not take a plea deal because of his alleged mental incompetency, and that he is an innocent "victim" of an "imperfect system of indictment." Further, Plaintiff attaches a sample letter petition for his release from immigration custody because he allegedly has been detained for more than nine months after his order of removal became final.

In a series of cases beginning with *Preiser v. Rodriguez*, 411 U.S. 475 (1973), the Supreme Court has analyzed the intersection of 42 U.S.C. § 1983 and the federal habeas corpus statute, 28 U.S.C. § 2254.  In *Preiser*, state prisoners who had been deprived of good-conduct-time credits by the New York State Department of Correctional Services as a result of disciplinary proceedings brought a § 1983 action seeking injunctive relief to

compel restoration of the credits, which would have resulted in their immediate release.  411 U.S. at 476.  The prisoners did not seek compensatory damages for the loss of their credits. 411 U.S. at 494.  The *Preiser* Court held that "when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus."  *Id.* at 500.

Thus, the proper course of action in this case would be the filing of a habeas petition, pursuant to 28 U.S.C. § 2254, after exhaustion of his state court proceedings, if Plaintiff seeks to challenge a state court conviction or sentence that served as the basis for his alleged removal proceedings.  Accordingly, Plaintiff's claims for habeas relief should be dismissed without prejudice to him filing the appropriate habeas petition in a separate action.

Moreover, to the extent that Plaintiff is seeking his release from federal immigration detention, the appropriate vehicle is a habeas petition pursuant to 28 U.S.C. § 2241. However, as observed by this Court above, Plaintiff is not in the custody of the ICE pending removal from the United States at this time, thus there is no subject matter jurisdiction over a

§ 2241 habeas claim, and any such § 2241 habeas claim must be dismissed accordingly.[8]

E.   Appointment of Counsel

Plaintiff also makes a general request for appointment of counsel in this matter.  Indigent persons raising civil rights claims have no absolute constitutional right to counsel.  *Parham v. Johnson*, 126 F.3d 454, 456–57 (3d Cir. 1997).  In determining whether to appoint counsel, a court should consider several factors:

> As a preliminary matter, the plaintiff's claim must have some merit in fact and law.... If the district court determines that the plaintiff's claim has some merit, then the district court should consider the following factors:
>
> (1) the plaintiff's ability to present his or her own case;
>
> (2) the complexity of the legal issues;
>
> (3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue such investigation;
>
> (4) the amount a case is likely to turn on credibility determinations;
>
> (5) whether the case will require the testimony of expert witnesses;

---

[8] Under 28 U.S.C. § 2241(c), habeas jurisdiction "shall not extend to a prisoner unless ... [h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).  A federal court has subject matter jurisdiction under § 2241(c)(3) if two requirements are satisfied: (1) the petitioner is "in custody," and (2) the custody is "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3); *see also Maleng v. Cook*, 490 U.S. 488, 490 (1989).

21

(6) whether the plaintiff can attain and afford counsel on his own behalf.

[*Tabron v. Grace*, 6 F.3d 147, 155-56, 157 n. 5 (3d Cir. 1993), *cert. denied*, 510 U.S. 1196 (1994).]  This list of factors is not exhaustive, but instead should serve as a guide post for the district courts.

Correspondingly, courts should exercise care in appointing counsel because volunteer lawyer time is a precious commodity and should not be wasted on frivolous cases. Id. at 157.

*Parham*, 126 F.3d at 457-58.

Similarly, there is no Sixth Amendment right to appointment of counsel in habeas proceedings.  *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987)("our cases establish that the right to appointed counsel extends to the first appeal of right, and no further"); *Parham*, 126 F.3d at 456-57 (holding that there is no statutory or constitutional right of counsel conferred upon indigent civil litigants); *Reese v. Fulcomer*, 946 F.2d 247, 263 (3d Cir. 1991), *cert. denied*, 503 U.S. 988 (1992)("there is no 'automatic' constitutional right to counsel in federal habeas corpus proceedings), *superseded on other grounds by statute*, 28 U.S.C. § 2254(d).

Title 18 of the United States Code, section 3006A(a)(2)(B) states that counsel may be appointed to an indigent habeas

petitioner where the "interests of justice so require."[9]   In

determining whether the interests of justice require appointment

of counsel, the Court must examine whether or not the petitioner

has presented a meritorious claim.  *See Biggins v. Snyder*, 2001

WL 125337 at * 3 (D.Del. February 8, 2001)(unpubl.)(citing *Reese*

*v.. Fulcomer*, 946 F.2d at 263-64) (other citations omitted).

Next, the Court must determine whether the appointment of

counsel will benefit the petitioner and the Court by examining

the legal complexity of the case and the petitioner's ability to

present his claims and investigate facts.  *See id*. (citing

*Reese*, 946 F.2d at 264; *Parham*, 126 F.3d at 457-58; *Tabron*, 6

F.3d at 155-56 (other citations omitted).  "Where these issues

are 'straightforward and capable of resolution on the record,'

or when the petitioner has 'a good understanding of the issues

and the ability to present forcefully and coherently his

contentions,' the court would not abuse its discretion in

declining to appoint counsel ."  *Biggins*, 2001 WL 125337 at * 3

(citations and quotations omitted); *see also Paul v. Attorney*

*General of New Jersey*, 1992 WL 184358 at* 1 (D.N.J. July 10,

1992)(unpubl.)(stating that the factors the court should

consider in appointing counsel under § 3006A include: "(i) the

---

[9] Likewise, 28 U.S.C. § 1915(e)(1) provides that a court may
"request an attorney to represent any person unable to afford
counsel."

likelihood of success on the merits; (ii) the complexity of the legal issues raised by the complaint; and (iii) the ability of the prisoner to investigate and present the case.").

As discussed above, Plaintiff's action will be dismissed without prejudice rendering his application for appointment of counsel moot.  Nevertheless, based on Plaintiff's allegations of mental incompetency and the bizarre allegation that he was killed but revived back to life, this Court has *sua sponte* considered whether there may be a viable basis to invoke Federal Rule of Civil Procedure 17(c).  *See Powell v. Symons*, 680 F.3d 301, 307 (3d Cir.2012) ("[I]t is the federal district court's obligation to issue an appropriate order 'to protect a minor or incompetent person who is unrepresented [by a general guardian] in an action'")(quoting *Fed.R.Civ.P.* 17(c)).  This Court's "duty of inquiry involves a determination of whether there is verifiable evidence of incompetence."  *Id.*  The *Powell* court articulated two forms of verifiable evidence of incompetence that trigger the district court's duty to inquire: (1) evidence of a court or public agency's adjudication of incompetence, or (2) evidence from a mental health professional demonstrating that the party is being or has been treated for mental illness "of the type that would render him or her legally incompetent."  *Id.*  Despite the allegations in the Complaint concerning

24

Plaintiff having been "killed" and "revived" and coming "back from the dead," as well as Plaintiff's self-professed mental incompetency, to this Court's knowledge, no court has found Plaintiff legally incompetent.  Under these circumstances then, there is no "verifiable evidence" pled indicating that Plaintiff is an "incompetent person" within the meaning of Rule 17(c). Therefore, Plaintiff's application for appointment of counsel will be denied as moot because the claims asserted herein are being dismissed without prejudice.

V.  CONCLUSION

For the reasons set forth above, Plaintiff's Complaint will be dismissed without prejudice, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), for failure to state a claim at this time. Further, to the extent Plaintiff is seeking his release from federal confinement or may be challenging a state court conviction, such claims will be dismissed without prejudice to Plaintiff filing the appropriate habeas petition under 28 U.S.C. § 2241 and/or 28 U.S.C. § 2254, if and when subject matter jurisdiction exists for such habeas claims.  Finally,

Plaintiff's application for appointment will be denied as moot at this time.  An appropriate order follows.


s/Freda L. Wolfson
FREDA L. WOLFSON
United States District Judge